**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HERITAGE FOUNDATION**, & **MIKE HOWELL**, | |
| *Plaintiffs,* | |
| v. | Case No. 1:22-cv-2688 (AHA) |
| **U.S. DEPARTMENT OF JUSTICE**, | |
| *Defendant.* | |

**PLAINTIFFS' MOTION FOR A DETERMINATION OF ELIGIBILITY FOR AND
ENTITLEMENT TO ATTORNEY FEES**

Pursuant to the parties' agreement and this Court's order dated May 13, 2025, Plaintiffs The Heritage Foundation and Mike Howell, hereby submit this motion for a determination by the Court of his eligibility for and entitlement to attorney fees and costs under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E).

As the accompanying memorandum explains, Plaintiffs are eligible for attorney fees and costs because Plaintiffs "substantially prevailed" in this case and are also entitled to fees and costs because equitable considerations favor such an award under the circumstances here. If the Court determines that plaintiff is eligible for and entitled to attorney fees and costs, Plaintiffs request that the Court set a date 30 days from the date of its order for Plaintiffs to supplement this application to include briefing on the calculation of their fees and costs if the parties are unable to come to an agreement regarding the amount of the award.

In support of this motion, plaintiff submits an accompanying legal memorandum. A proposed order is also attached.

Dated: May 16, 2025 May 16, 2025     Respectfully submitted,

/s/ Samuel Everett Dewey
SAMUEL EVERETT DEWEY
(No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone:  (703) 261-4194
Email:  samueledewey@sedchambers.com

KYLE BROSNAN
(No. 90021475)
The Heritage Foundation
Telephone:  (202) 608-6060
Email:  Kyle.Brosnan@heritage.org

ERIC NEAL CORNETT
(No. 1660201)
Law Office of Eric Neal Cornett
Telephone:  (606) 275-0978
Email:  neal@cornettlegal.com

MAX TAYLOR MATHEU
(No. 90019809)
Telephone:  (727) 249-5254
Email:  maxmatheu@outlook.com

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**HERITAGE FOUNDATION**, &
**MIKE HOWELL**,

        *Plaintiffs,*

    v.

**U.S. DEPARTMENT OF JUSTICE**,

        *Defendant.*

---

Case No. 1:22-cv-2688 (AHA)

**PLAINTIFFS' MEMORANDUM FOR A DETERMINATION OF ELIGIBILITY FOR
AND ENTITLEMENT TO ATTORNEY FEES**

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ..................................................................................................... 1

BACKGROUND ......................................................................................................... 1

LEGAL STANDARD .............................................................................................. 7

ARGUMENT .............................................................................................................. 7

    I.  PLAINTIFFS ARE ELIGIBLE FOR ATTORNEY'S FEES ................................. 7

    II.  PLAINTIFFS ARE ENTITLED TO ATTORNEY'S FEES ................................ 10

CONCLUSION .......................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................ 8

*Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521 (D.C. Cir. 2011) .......................... 8, 9

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001) ........................................................................................................................ 9

*Burka v. U.S. Dep't of Health & Hum. Servs.*, 142 F.3d 1286 (D.C. Cir. 1988) ...................... 9, 10

*Chesapeake Bay Found. v. USDA*, 11 F.3d 211 (D.C.Cir.1993) .................................. 11

*Covington v. District of Columbia*, 57 F.3d 1101 (D.C. Cir. 1995) .............................. 8

*Davy v. C.I.A.*, 550 F.3d 1155 (D.C. Cir. 2008) ........................................ 11, 12, 13, 14

*Elec. Priv. Info. Ctr. v. Fed. Bureau of Investigation*, 72 F. Supp. 3d 338 (D.D.C. 2014) .......... 12

*Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 87 F.Supp.3d 223 (D.D.C. 2015) ............................ 13

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.,* 811 F.Supp.2d 216 (D.D.C. 2011) .......... 13

*Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94 (D.C. Cir. 2020) ................................ 9, 10

*Mobley v. DHS*, 908 F.Supp.2d 42 (D.D.C. 2012) ...................................................... 9

*Morley v. Cent. Intel. Agency*, 894 F.3d 389 (D.C. Cir. 2018) .................................... 7

*Tax Analysts v. Dep't of Justice*, 965 F.2d 1092 (D.C.Cir.1992) .......................... 11, 13

*Weisberg v. Dep't of Just.*, 848 F.2d 1265 (D.C. Cir. 1988) ........................................ 8

**Statutes**

5 U.S.C. § 552(a)(4)(E)(i) ............................................................................................ 7

5 U.S.C. § 552(a)(4)(E)(ii) ........................................................................................... 8

5 U.S.C. § 552(a)(4)(E)(ii)(I) ....................................................................................... 8

5 U.S.C. § 552(a)(6)(A)(i) ........................................................................................ 4, 5

5 U.S.C. § 552(a)(6)(E)(ii)(I) ....................................................................................... 4

**Regulations**

28 C.F.R. § 16.5(e)(l)(iv) .......................................................................................................... 1, 6

## INTRODUCTION

This is an important case.  The Federal Bureau of Investigation ("FBI") raided the personal residence of President Donald J. Trump.  This has never happened before in the nearly 250 years of the Republic.  The Mar-a-Lago raid was politically motivated.  That is the basis of this FOIA action.  The current Executive Branch has even determined that it was likely criminal misconduct.  The Department of Justice ("DOJ" or "Department") improperly processed Plaintiffs' request.  Not only did the Department fail to meet the statutory deadlines of FOIA, but it also failed to acknowledge Plaintiffs' expedited processing request in a timely manner.  Further, the Department failed to notify Plaintiffs of its decision to grant the expedited processing request until *after* a motion for a preliminary injunction was filed.  That Motion was only withdrawn when the Department contacted its individual components and relayed days later that the Department was *expediting* the *specific* Request.  That is why we are here.  Plaintiffs are eligible for fees because Plaintiffs' filing for Preliminary Injunction substantially caused the Department to process the requested documents before final judgment.  Plaintiffs are also entitled to fees under this Circuit's entitlement factors because they all weigh in Plaintiffs' favor.  This Court should grant Plaintiffs' petition for attorney's fees.

## BACKGROUND

Plaintiffs submitted their FOIA request on August 11, 2022. ("Request" or "Plaintiff's FOIA Request") (Ex. 1).  The Request sought: "All communications external to the United States Government relating to a search warrant carried out at Mar-a-Lago on or about August 8, 2022, docketed as *In re Sealed Search Warrant*, No. 9:22-mj-08332 (BER) (S.D. Fla.)."  Request at 1.

The Request sought expedited processing because it concerned: "A matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence."  28 C.F.R. § 16.5(e)(l)(iv); see ECF No. 1-5, at 4.  The

1

Request set forth the basis for expedition at length.  *See* ECF No. 1-5, at 4- 6.  It included thousands of pages of factual Appendices.  *See* ECF Nos. 1-7, 1-8, 1-9.

Plaintiffs' FOIA Request sought records bearing directly on this central question: "Is the Department communicating regarding the August 8, 2002 raid of Mar-a-Lago via its 'filings and works' or through leaks and other selective and strategic statements to the public?" Am. Compl. ¶ 3 (emphasis added) (ECF No. 5).  Plaintiffs argued throughout these proceedings that the Department engaged in authorized leaks to the media, which violate Department policy and then-Attorney General Merrick B. Garland's statements to the contrary.

These authorized leaks prejudiced the American public against President Trump, and were part of a coordinated media and government approach to allege criminal violations before any judicial process.  As discussed in the Request, on August 8, 2022, the *Washington Pos*t reported on the raid.  Devlin Barret et al., *FBI Searches Trump Safe at Mar-a-Lago for Possible Classified Document*, Wash. Post (Aug. 8, 2022).  That article contained a number of leaks that almost certainly came from the Department.  As did *The New York Times* reporting of the raid.  App. 0490.

Then-Attorney General Garland assured the American people "that the Department of Justice will speak through its court filings and its work."  Attorney General Remarks (Aug. 11, 2022), App. B 001.  These assurances were false.

Since taking office on January 20, 2025, President Donald J. Trump has made clear that the FBI's August 8, 2022, Mar-a-Lago raid was likely illegal through statements by his administration, executive actions, and targeted measures against those involved in the investigation.  The Trump Administration's actions seek to underscore the widely held belief that the raid represented an unlawful overreach by the Department.  To accomplish this, President

Trump and his Administration have pursued a multi-faceted approach to reinforce this position, including public statements, the return of seized documents, and efforts to curb the "weaponization" of federal agencies.  These actions reflect a concerted effort to challenge the legal and political fallout of the raid while advancing his broader agenda of reforming federal bureaucracies.

On February 28, 2025, the White House announced that the Department of Justice had returned the documents seized during the raid, a move signaling President Trump's rejection of the investigation's legitimacy.  White House Communications Director Steven Cheung declared, "The FBI is giving the President his property back that was taken during the unlawful and illegal raids," emphasizing the Administration's stance that the raid lacked legal grounding. *FBI Returns Records from Mar-a-Lago Search to Trump, White House Says*, NBC News (Mar. 1, 2025), https://www.nbcnews.com/politics/donald-trump/fbi-returns-records-mar-lago-search-trump-white-house-says-rcna137996).    Then-Counselor to the President Alina Habba echoed this sentiment, stating, "These are President Trump's things . . . [T]hey were unlawfully taken from . . . Florida," reinforcing the claim that the seizure was an illegal act against President Trump's property rights. *Id.*  These statements, made during the document transfer to Mar-a-Lago via Air Force One, underscored that the raid was an unjustified intrusion.

To address the broader context of the raid, President Trump signed Executive Order 14147, "Ending the Weaponization of the Federal Government," on January 20, 2025, his first day in office.  This Executive Order directs the Attorney General and agency heads to review enforcement actions over the past four years for politically motivated conduct, targeting agencies like the Department, which oversaw the Mar-a-Lago investigation.  Exec. Order No. 14147, 90 Fed. Reg. 8235  (Jan.  28,  2025),  https://www.whitehouse.gov/presidential-actions/2025/01/ending-the-

weaponization-of-the-federal-government/. A related Executive Order on February 18, 2025, increased White House control over "independent" agencies, aligning with President Trump's goal of curbing weaponized bureaucratic actions. Exec. Order No. 14215, 90 Fed. Reg. 10447 (Feb. 18, 2025). Additionally, on February 25, 2025, President Trump issued a memorandum suspending security clearances for Covington & Burling LLP, a law firm that assisted Special Counsel Jack Smith in the documents case, and its attorney Peter Koski, pending a review of their roles in alleged judicial weaponization. The memorandum also ordered a review of the firm's federal contracts, directly tying this action to the Mar-a-Lago investigation (Memorandum on Suspension of Security Clearances and Evaluation of Government Contracts, 2025 Daily Comp. Pres. Doc. 149 (Feb. 25, 2025), https://www.whitehouse.gov/presidential-actions/2025/02/suspension-of-security-clearances-and-evaluation-of-government-contracts/.

Through these measures–public denunciations, the physical return of documents, Executive Orders, and targeted actions against law firms involved in the investigation–President Trump has shown that the Mar-a-Lago raid was an illegal act of political persecution.

Returning to the procedural posture of this case, on August 20, 2022, Plaintiffs followed up on their request for expedited processing and supplemented the record. *See* ECF No. 1-6. By statute, the Department was required to respond to the request for expedited processing within 10 calendar days-August 21, 2022. 5 U.S.C. § 552(a)(6)(E)(ii)(I). The Department did not do so.

By statute, the Department was required to make a determination on Plaintiffs' Request within 20 working days, which concluded on September 9, 2022. 5 U.S.C. § 552(a)(6)(A)(i). The Department did not do so.

Following inaction and no response from the Department, Plaintiffs transmitted a letter to follow up on the Request by "supplement[ing] the record in support of my request for expedited

processing." Letter from Mike Howell to DOJ FOIA Officer (Aug. 20, 2022) (ECF No. 5-3). The supplementation consisted of Appendix B (ECF No. 5-5), a "statement by the Attorney General and Court filings in *In Re Sealed Search Warrant*, 22-mj- 0332 (BER) (S.D. Fla)." (ECF No. 5-3) and Appendix C (ECF No. 5–6), 2589 pages of additional relevant news articles.

After not receiving a response, Plaintiffs filed this action on September 7, 2022, and set forth Plaintiffs' entitlement to expedited processing of their Request. *See* ECF No. 1. The Department was required to provide a determination on Plaintiffs' FOIA Request within 20 working days, which ran on September 9, 2022. 5 U.S.C. § 552(a)(6)(A)(i). No determination had been provided. Although it was not necessary, in an abundance of caution, Plaintiffs filed an Amended Complaint to reflect these facts on September 21, 2022. ECF No. 5.

With no response to their communications or lawsuit, Plaintiffs' counsel contacted the Chief of the Civil Division for the United States Attorney's Office for the District of Columbia to resolve the issue of expedited processing without involvement of this Court. *See* Letter from Samuel E. Dewey to Brian P. Hudak (Sept. 21, 2022) (Dewey Decl. Ex. 1). That letter advised that Plaintiffs would file a preliminary injunction motion if their request for expedited processing was not granted by all relevant components by the close of business on September 23, 2022. *Id.* at 3–4.

Three days later, Plaintiffs filed their Motion for a Preliminary Injunction and supporting papers on September 26, 2022. ECF No. 10. Plaintiffs refiled on September 27, 2022 in response to a Minute Order striking Plaintiffs' Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction. ECF No. 11.

The next day, Plaintiff received an email from the Department which stated:

Meanwhile, it is unfortunate that we were not able to connect before you filed your motion, because your request for expedition was granted five days ago, on August

22.  It appears to have been sent to the wrong email address.  I am attaching both the email acknowledgment and letter that granted expedition.  Please let me know if you would like to withdraw your motion, in which case we will respond to your complaint on the already expedited schedule FOIA litigation requires.

Email from Elizabeth Shapiro to Samuel Dewey (Sept. 27, 2022; 1:29 PM EST) (Ex 1).

The attached records show that the Department's response to Plaintiffs' FOIA Request was misaddressed in one location to "John Zadrozny" (Letter from Douglas R. Hibbard to Mike Howell/John Zadrozny (Aug. 22, 2022) (Ex. 2)) and was transmitted to "jasonleopold@gmail.com" (Ex. 3).  Plaintiffs had not previously received this communication. Based on all available information, the Department was not actually processing the request on an expedited basis and certainly had made no relevant communication to Plaintiffs.

In a phone call that same day with Mr. Dewey, the Department advised that it did not review the September 21, 2022 letter from Mr. Dewey to Mr. Hudak seeking to resolve the issue of expedited processing without a motion for a preliminary injunction until it was too late.

During additional phone calls with Mr. Dewey on September 27, 2022, the Department stated its position that they believed that the decision to grant expedited processing by the Director of Public Affairs based on 28 C.F.R. § 16.5(e)(1)(iv) bound all components.  Plaintiffs agreed this position was correct under Department regulations, however, the Executive Office for United States Attorneys ("EOUSA") acted inconsistently with this position with Plaintiffs' separate and related FOIA request.  The EOUSA denied expedited processing after the Director of Public Affairs had granted expedited processing to that same request.  Plaintiffs indicated that this issue was discussed in Plaintiffs' Preliminary Injunction briefing and directed the Department to the relevant papers.  ECF No. 11-1, at 28–29.  Plaintiffs also noted that the Office of the Solicitor General ("OSG") had not acted on Plaintiffs' expedite processing request in this case. ECF No. 11-7.  Thus, Plaintiffs still considered the Motion for a Preliminary Injunction a live issue

because it appeared the Department was not actually expediting the Request.  Further, Plaintiffs refused to withdraw the Motion for Preliminary Injunction unless the Department provided written confirmation that all relevant components were in fact actually processing Plaintiffs' FOIA Request on an expedited basis.

On October 3, 2022, Plaintiffs received final written confirmation that "all of the components of the Department of Justice enumerated in Plaintiffs' August 11, 2022 Freedom of Information Act ("FOIA") request, as well as the National Security Division and the Office of Public Affairs, are processing Plaintiffs' August 11, 2022 FOIA request on an expedited basis." Letter from to Julia Heiman to Samuel Dewey (Oct. 3, 2022) (Ex. 5).

Since then, the Department has produced all relevant records.  The only remaining issue in this case is Plaintiffs' fee petition.

## LEGAL STANDARD

Under FOIA, the district court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  *Morley v. Cent. Intel. Agency*, 894 F.3d 389, 391 (D.C. Cir. 2018).

Fee awards are analyzed in two prongs:  fee eligibility and fee entitlement.  *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 524 (D.C. Cir. 2011).  If both are established, a plaintiff must then show the reasonableness of its fee request.  *See Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995); *Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984).

## ARGUMENT
## I.  PLAINTIFFS ARE ELIGIBLE FOR ATTORNEY'S FEES

To establish eligibility for fees, a plaintiff must show that it "substantially prevailed" in the underlying FOIA action by gaining relief from either: "(I) a judicial order, or an enforceable

written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). When faced with claims that a plaintiff substantially prevailed through a judicial order or the so-called catalyst theory, "[t]he question of whether a litigant substantially prevailed is one of fact." *Weisberg v. Dep't of Just.*, 848 F.2d 1265, 1268 (D.C. Cir. 1988), *overruled on other grounds by King v. Palmer*, 950 F.2d 771 (D.C. Cir. 1991). Here, Plaintiffs are moving for fees under the catalyst theory and waive any claims under the judicial order provision of 5 U.S.C. § 552(a)(4)(E)(ii)(I).

Under the "catalyst theory," "a plaintiff can prove fee eligibility by showing that its lawsuit 'substantially caused the government to release the requested documents before final judgment.'" *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 96 (D.C. Cir. 2020) (quoting *Brayton*, 641 F.3d at 524–25); *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 610 (2001) (explaining that the test under this "catalyst theory" is "whether the lawsuit was a substantial . . . cause of the defendant's change in conduct").

A plaintiff must show "that it is more probable than not that the government would not have performed the desired act absent the lawsuit." *Grand Canyon Tr.*, 947 F.3d at 97 (citation omitted). "A FOIA case must be viewed in its totality in determining whether a plaintiff has 'substantially prevailed.'" *Mobley v. DHS*, 908 F.Supp.2d 42, 48 (D.D.C. 2012). This totality includes demonstrating "that the lawsuit was reasonably necessary and the litigation substantially caused the requested records to be released." *Burka v. U.S. Dep't of Health & Hum. Servs.*, 142 F.3d 1286, 1288 (D.C. Cir. 1988).

Here, Plaintiffs' lawsuit "'substantially caused the government to release the requested documents before final judgment[,]'" *Grand Canyon Tr.*, 947 F.3d at 96, because without the

Motion for Preliminary Injunction the Department would not have processed the Request in an expedited manner. Notwithstanding the Department's mistake in sending the grant of expedited processing to the wrong email address and failure to read Plaintiffs letter to the Civil Chief of the D.C. U.S. Attorney's Office, Plaintiffs maintained that the preliminary injunction issue was still live, because the Department was not actually expediting the Request. After all, OSG had not responded to the expedition request and EOUSA denied expedition on a parallel request. ECF No. 13 at 3. The double misaddress raises the question of whether any Department component was actually expediting the Request. *Id.* Additionally, the Department's unresponsiveness to multiple communication attempts before filing the Complaint, amending the Complaint, and before submitting the Motion for Preliminary Injunction to negotiate the mere processing of the Request, demonstrates "that the lawsuit was reasonably necessary and the litigation substantially caused the requested records to be released." *Burka*, 142 F.3d 1286 at 1288. This was not a mere mistake. This was more.

Even further, before Plaintiffs withdrew their Motion, the Department agreed to provide written confirmation that all components were processing Plaintiffs' Request in an expedited manner. Ex. 13-5. Put differently, the Department impliedly agreed that the Motion was not moot until it provided that confirmation, and the Department was actually expediting the Request. The factual record shows that "it is more probable than not" that Defendant would not have processed these records on an expedited basis without the Complaint and Motion for Preliminary Injunction. *Grand Canyon Tr.*, 947 F.3d at 97 (citation omitted). But for the written confirmation after Plaintiffs filed the Motion for Preliminary Injunction, the Department's components did not process the Request at all–let alone in an expedited manner. Plaintiffs have provided hard evidence that this litigation substantially caused the Department to process their request in an expedited

9

manner.  Plaintiffs are eligible for fess.  Plaintiffs are also entitled to fees under this Circuit's entitlement analysis.

## II.  PLAINTIFFS ARE ENTITLED TO ATTORNEY'S FEES

After clearing the threshold issue of eligibility, courts "consider at least four criteria in determining whether a substantially prevailing FOIA litigant is entitled to attorney's fees . . . ." *Davy v. C.I.A.*, 550 F.3d 1155, 1159 (D.C. Cir. 2008).  Those factors include: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents."  *Davy*, 550 F.3d 1155 at 1159 (quoting *Tax Analysts v. Dep't of Justice*, 965 F.2d 1092, 1093–94 (D.C.Cir.1992); S.Rep. No. 93–854 at 19.).  "No one factor is dispositive, although the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure."  *Id.* (citing *Chesapeake Bay Found. v. USDA*, 11 F.3d 211, 216 (D.C.Cir.1993), *abrogated in part on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources,* 532 U.S. 598, 601–02, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)).  Plaintiffs meet all four factors, and demonstrated below in relevant part, are entitled to fees.

The first factor assesses "the public benefit derived from the case," *Tax Analysts,* 965 F.2d 1092 at 1093, and requires courts to consider two issues, "the effect of the litigation for which fees are requested and the potential public value of the information sought."  *Davy*, 550 F.3d 1155 at 1159 (cleaned up).  The public benefit factor should not be read narrowly, "the relevant inquiry is whether [Plaintiffs'] success 'is *likely* to add to the fund of public information that citizens may use in making vital political choices.'"  *Elec. Priv. Info. Ctr. v. Fed. Bureau of Investigation ("EPIC")*, 72 F. Supp. 3d 338, 346 (D.D.C. 2014).

Consider the unprecedented nature of the Mar-a-Lago raid.  Plaintiffs' Request for FBI communications with outside entities to capture authorized leaked materials provides a large public benefit from the case.  The news media coverage of the raid was significant.  The political backlash was also significant.  For weeks, the Mar-a-Lago raid was the centerpiece of the news cycle and political concern.  The Request used this immense coverage as a backdrop to answer further questions about the weaponization of the Biden Justice Department.  And as the current Administration has made resoundingly clear, the Mar-a-Lago raid was a focal point in this weaponization. *Supra* pp. 2–4.

The same is true for "the effect of the litigation . . . and the potential public value of the information sought." *Davy*, 550 F.3d at 1159.  Here, Plaintiffs' litigation spurred the production of communications with outside entities.  Additionally, the potential public value was exponential, and Plaintiffs only need to show that their "success "'is *likely* to add to the fund of public information that citizens may use in making vital political choices.'" *EPIC*, 72 F. Supp. 3d 338 at 346.  If the Department were conducting authorized leaks with the *Washington Post* or *The New York Times*, the Biden Administration's narrative would have collapsed.  This would not be the case of impartial prosecution where the court filings would speak for the Department, rather, it would be naked political persecution.  This context furthers Plaintiffs' argument that there was public benefit derived from this litigation which was the direct cause of those records being released.

The second and third factors, which are often considered together, assess whether a plaintiff has "sufficient private incentive to seek disclosure" without attorney's fees. *See Tax Analysts,* 965 F.2d at 1095.  "The second factor considers the commercial benefit to the plaintiff, while the third factor considers the plaintiff's interest in the records." *Davy*, 550 F.3d at 1160.  "Judges in this

11

District have determined that these two factors distinctly favor this plaintiff, since it is a 'non-profit public interest research center . . . [that] derived no commercial benefit from its FOIA request or lawsuit,' and its stated aims are the public dissemination of information." *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 87 F.Supp.3d 223, 234 (D.D.C. 2015) (citing *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.,* 811 F.Supp.2d 216, 235 (D.D.C. 2011)).

The Heritage Foundation is a non-profit educational institution that derived no commercial benefit from its FOIA request or lawsuit. The Oversight Project, a subdivision of The Heritage Foundation, publicly disseminates information gathered through FOIA requests and litigation. The caselaw on this point weighs in Plaintiffs favor.

The fourth factor considers whether the agency's opposition to disclosure "had a reasonable basis in law," and whether the agency "had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior . . . ." *Davy*, 550 F.3d at 1162. "If the Government's position is correct as a matter of law, that will be dispositive. If the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus." *Id.*

The Department engaged in obdurate behavior for several reasons. First, the Department violated the statutory deadline for a response to both the expedited processing claim and the underlying FOIA request. Second, the Department's improperly delivered decision granting expedited processing after the submission of the Preliminary Injunction further delayed the procedural posture of this case. Third, the Department refused to answer any of Plaintiffs' communications before or after filing this suit. Lastly, the Department failed to respond to Plaintiffs' letter advising the Department of its intent to file the Motion for Preliminary Injunction. In combination, there is at the very least a pattern of tactical delay; it is not a simple mistake.

Violating the statutory deadlines is incorrect as a matter of law.  Nor is there a colorable basis in law for the Department to have failed to respond to either the underlying Request or the application for expedited processing.  For these reasons, Plaintiffs succeed on the fourth factor of the analysis as well.

## CONCLUSION

For the forgoing reasons, Plaintiffs are both eligible and entitled to attorney's fees, and this Court should grant Plaintiffs' Motion for a Fee Petition.

Dated:  May 16, 2025May 16, 2025          Respectfully submitted,

                                          /s/ Samuel Everett Dewey
                                          SAMUEL EVERETT DEWEY
                                          (No. 999979)
                                          Chambers of Samuel Everett Dewey, LLC
                                          Telephone:   (703) 261-4194
                                          Email:  samueledewey@sedchambers.com

                                          KYLE BROSNAN
                                          (No. 90021475)
                                          The Heritage Foundation
                                          Telephone:  (202) 608-6060
                                          Email:  Kyle.Brosnan@heritage.org

                                          ERIC NEAL CORNETT
                                          (No. 1660201)
                                          Law Office of Eric Neal Cornett
                                          Telephone:  (606) 275-0978
                                          Email:  neal@cornettlegal.com

                                          MAX TAYLOR MATHEU
                                          (No. 90019809)
                                          Telephone:  (727) 249-5254
                                          Email:  maxmatheu@outlook.com

                                          *Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HERITAGE FOUNDATION**, & **MIKE HOWELL**, <br><br> *Plaintiffs,* <br><br> v. <br><br> **U.S. DEPARTMENT OF JUSTICE**, <br><br> *Defendant*. | Case No. 1:22-cv-2688 (AHA) |

### [PROPOSED] ORDER

Upon consideration of Plaintiffs' Motion for A Determination Of Eligibility For And Entitlement To Attorney Fees, it is hereby

**ORDERED** that Plaintiffs' motion is **GRANTED**; Judgment is **ENTERED** in Plaintiffs' favor.

**SO ORDERED.**

_____                    _____
DATE                                       Hon. Amir H. Ali
                                           **UNITED STATES DISTRICT JUDGE**

1